FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

25 JUL 18 AM 10: 37

7 of 57

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____
_____
(To be supplied by the court)

Brittany Nakagaki
_____, Plaintiff

v.

**Jury Trial requested:**
(please check one)
____ Yes ____ No

Please see attached _____,

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

*8 of 57*

**A.    PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Brittany Nakagaki 4200 W I 40 Service Rd, Oklahoma City, OK 73108
(Name and complete mailing address)

916-320-0608 BrittanyNakagaki9@gmail.com
(Telephone number and e-mail address)

**B.    DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Please see attached
(Name and complete mailing address)

(Telephone number and e-mail address if known)

Defendant 2:
(Name and complete mailing address)

(Telephone number and e-mail address if known)

**C.    JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

_____    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

_____    Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

_____    Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

__x__    Other: *(please specify)*    28 U.S.C. Section 1391(b)(1) and (2)

2

9 of 51

**D.     STATEMENT OF CLAIM(S)**
*State clearly and concisely every claim that you are asserting in this action and the specific facts*
*that support each claim. If additional space is needed to describe any claim or to assert*
*additional claims, use extra paper to continue that claim or to assert the additional claim(s).*
*Please indicate that additional paper is attached and label the additional pages regarding the*
*statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: <u>Under Title VIII of the Civil Rights Act of 1968 Section 804(f)(1)(A)</u>

The conduct complained of in this claim involves the following: (*check all that apply*)

____ failure to hire                    ____ different terms and conditions of employment

____ failure to promote              __X__ failure to accommodate disability

____ termination of employment   ____ retaliation

____ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

____ race          ____ religion       ____ national origin       ____ age

____ color         ____ sex            __X__ disability

Supporting facts:

3

*10 of 57*

**E.    ADMINISTRATIVE PROCEDURES**

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

      x  Yes  (*You must attach a copy of the administrative charge to this complaint*)

      ___ No

Have you received a notice of right to sue? (*check one*)

      x  Yes  (*You must attach a copy of the notice of right to sue to this complaint*)

      ___ No

**F.    REQUEST FOR RELIEF**
*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

**G.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

   7/18/25
_____
(Date)

(Revised February 2022)

4

*II of 57*

Additional Page For Employment
Discrimination Complaint

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

### B. DEFENDANTS INFORMATION

(D1) Aspen Valley Hospital; Kathryn Mueller, Anne Moore, Edward Mendez
Luna, Jessica Bass, Kathleen Owens, Karra Cieslinski Becca Carcaterra; 401
Castle Creek Rd Aspen CO 81611
(D2) Valley View Hospital; Lisa Wilson, Tammy Baxter, Caitlin Anderson, Heila
Ayala; 1906 Blake Ave Glenwood Springs, CO 81601
(D3) Grand River Hospital 501 Airport Rd, Rifle, CO 81650

### D. STATEMENT OF CLAIMS

32. **CLAIM 1. Refusal to Rent- Section 804(f)(1)(A):** Defendants' refused to rent
or otherwise made housing unavailable to Plaintiff Nakagaki verbally and via
multiple emails dated from 2/23/24-3/19/24 because of Plaintiff Nakagaki's
disability, in violation of 42 U.S.C. Section 3604(f)(1)(A).

33. **CLAIM 2. Discriminatory Terms and Conditions- Section 804(f)(2)(A):**
Defendants' Subjected Plaintiff Nakagaki to terms and conditions of tenancy that
new more burdensome than those applied to non-disabled tenants, such as
restricted access to amenities, possible cleaning fees because of pet dander, via
multiple emails dated from 2/23/24-3/19/24, in violation of 42 U.S.C. Section
3604(f)(2)(A).

34. **CLAIM 3. Failure to Make Reasonable Accommodation- Section
804(f)(3)(B):** Plaintiff Nakagaki requested a reasonable accommodation in
Defendants' rules/policies (besides disability, Plaintiff also had experienced
extremely dangerous circumstances, when also trafficked out of a hotel, which
Defendants' have a policy about emergency housing as well and Plaintiff Nakagaki
was still denied any employee housing because of her disability) specifically in

I

*12 of 97*

staying at employee housing. This accommodation was necessary for Plaintiff Nakagaki's equal use and enjoyment of the dwelling. Defendants' refused to make the accommodation, in violation of 42 U.S.C. Section 3604(f)(3)(B).

35. **CLAIM 4. Retaliation/ Interference- Section 818**: After Plaintiff engaged in protected activity under the Fair Housing Act- including requesting accommodations, opposing discrimination and filing a HUD complaint, Defendants' retaliated against Plaintiff Nakagaki including but not limited to: harassment, offered Plaintiff Nakagaki substantially lower wages than other employees, planning to charge Plaintiff Nakagaki $1000 for a pet deposit if she were to get employee housing,(which Plaintiff Nakagaki never received) rescinding Plaintiff Nakagaki's job offer, termination and Blacklisting Plaintiff Nakagaki, giving out bad references and telling other potential employers not to hire Plaintiff Nakagaki.

36. As a direct and proximate result of Defendants' Actions, Plaintiff suffered concrete and particularized injuries, including:
A) Loss of housing opportunity or access;
B) Emotional Distress;
C) Deterred excrete of rights under the Fair Housing Act;
D) Retaliatory harm affecting tenancy and use of the premises.

37. These injuries are traceable to Defendants' Discriminatory conduct and are redressable by this Court through declaratory, injunctive, and monetary relief. Plaintiff has standing to bring theses claims under Article III of the U.S. Constitution. Subject Matter jurisdiction is proper under 28 U.S.C. Section 1331 and 42 U.S.C. Section 3613.

**Prayer for Relief:**

WHEREFORE, Plaintiff Nakagaki respectfully requests that this Court:
38. Declare the Defendants' actions, as alleged above, violate the Fair Housing Act, including:
CLAIM 1. 42 U.S.C. Section 3604 (f)(1)(A), by refusing to rent or otherwise make housing available because of a disability;
CLAIM 2. 42 U.S.C. Section 3604(f)(2)(A), by imposing discriminatory terms, conditions or privileged on the basis of disability;
CLAIM 3. 42 U.S.C. Section 3604(f)(3)(B), by failing to provide reasonable accommodations necessary to use and enjoy the dwelling, and
CLAIM 4. 42 U.S.C. Section 3617, by coercing, or interfering with the Plaintiff in

the exercise or enjoyment of rights granted under the Fair Housing Act.

39. Order Injunctive Relief requiring Defendants' to:
  a) Cease all discriminatory practices against individuals with disabilities;
  b) provide reasonable accommodations as required under Federal Law;
  c) Implement policies and training to ensure future compliance with the Fair Housing Act.

40. Award Compensatory Damage for emotional distress, inconvenience, and loss of housing opportunity suffered as a result of Defendants' unlawful conduct, Provide Plaintiff Nakagaki with a position at any such time at Defendants' with reasonable accommodations as needed and requested.
41. Grant such other and further relief as the Court may deem just and proper.

42. **CLAIM 5. Americans with disabilities Act( ADA), Title II- Discrimination by public entities(covers state and local governments)**

**Factual Allegations:**
43. Plaintiff Nakagaki is a qualified individual with a disability as defined by the ADA.
44. On or about 2/23/24-3/19/24 Plaintiff Nakagaki attempted to use the Defendants' employee housing.
45. Defendants' Failed to provide reasonable accommodations to allow Plaintiff Nakagaki to use the facilities (employee housing- no pet policy defendant refused to allow Plaintiff Nakagaki's service animal and/or make employee housing available for use to Plaintiff Nakagaki after learning of her disability and accommodations)
46. As a direct result of Defendants' inaction, Plaintiff Nakagaki was denied meaningful access and equal opportunity to benefit from the public service, causing missed opportunity, emotional distress, and exclusion.
47. Defendant had knowledge of Plaintiff Nakagaki's disability and was aware of its obligations under the ADA but failed to act or make reasonable accommodations. (As evidenced in emails to and from Plaintiff Nakagaki between 2/23/24-3/29/24 to Defendants')

**Standing:**
48. Plaintiff Nakagaki has standing to being this action. Plaintiff suffered an injury in fact that is concrete and particularized, in that Plaintiff Nakagaki was excluded from participation in, denied the benefits of, and subjected to discrimination by

*14 of 57*

Defendants' from employee housing, resulting in emotional damage, and eventually termination of job and rescinding of job offer contract for 2 years with defendant, and retaliation including but not limited to, blacklisting for future employment, reputational harm, Intentional Infliction of emotional distress

49. Plaintiff Nakagaki's injury is traceable to Defendants' conduct through multiple avenues of emails from Defendant while Plaintiff was employed to statements from other facilities regarding bad references (blacklisting) from Defendants', including denial of meaningful access to employee housing.

50. The injury is redressable by the Court through injunctive and/ or declaratory relief, as well as compensatory damages.

**Claim for Relief:**
Violation of Title II of ADA( 42 U.S.C. Section 12132)

51. Plaintiff Nakagaki incorporated all prior paragraphs as if fully set forth herein.

52. Defendants', a Public entity, has discriminated against Plaintiff Nakagaki from participation in and denying Plaintiff Nakagaki the benefits of its services, programs, or activities, in violation of 42 U.S.C. Section 12132 and it implementing regulations, 28 C.F.R. part 35.

53. Defendants' failed to provide reasonable modification or to ensure effective communication/ access, despite being legally obligated to do so with their employee housing for Plaintiff Nakagaki.

54. As a result, Plaintiff Nakagaki has suffered injury and is entitled to appropriate declaratory and injunctive relief, and where applicable, compensatory damages.

**Prayer for Relief:**
WHEREFORE, Plaintiff Nakagaki respectfully requests that the court:

55. Declare that Defendants' conduct violated Title II of the ADA;

56. Issue an injection requiring defendant to make its services/programs/employee housing accessible;

57. Award Plaintiff Nakagaki compensatory damages, and declare that Plaintiff Nakagaki has the right to a position at this facility and use employee housing with accommodations for her service animal in compliance with ADA guidelines ;

58. Grant any other relief the Court deems just and proper.

---

## FEDERAL COMMON LAW/ CONSTITUTIONAL CLAIMS

63. **Violation of 42 U.S.C. Section 1983- Retaliation; 42 U.S.C. Section 1985(3) - Civil Conspiracy**

*4*

**Factual Allegations**

64. In or around February and March 2024, Plaintiff reported
A) ADA Violation related to employee Housing and disability accommodations,
B) Unsafe working conditions affecting patients and staff,
C) Concerns regarding pay disparity and wages for sterile processing staff

65. These reports were made internally to Kathryn Mueller and Edward Mendez Luna, and conversed with Anne Moore regarding Jessica Bass and Kathleen Owens and involved matters of public concern. With matters of responding to patient and safety issues were spoken with Karra Cieslinski and Becca Carcaterra as well as the wages and emergency employee housing due to almost getting trafficked at the hotel I was staying at. And externally to HUD, OSHA, CDLE, NLRB, CCRD, DORA, EEOC, Joint Commission etc.

66. Defendants' through their official and in cooperation with each other, took retaliatory action against Plaintiff Nakagaki, including but not limited to Blacklisting, reputational harm, revocation of job offers and denial of job to Plaintiff Nakagaki.

67. Upon information and belief, the Defendants communicated and coordinated their actions in furtherance of a conspiracy to retaliate against Plaintiff Nakagaki and deprive Plaintiff Nakagaki of equal protection and liberty interests.

68. the retaliatory and conspiratorial conduct caused Plaintiff Nakagaki to suffer financial harm, emotional distress, reputational damage, and other injuries.

66. With-in weeks of making these protected reports, Plaintiff Nakagaki experienced retaliation from AVH and individuals acting on its behalf, including:
A) Harassment in the workplace
B) Pretextual negative evaluations or false statements
C) Communication of harmful informations to other hospitals.

67. In March and April 2024, Plaintiff Nakagaki had job offers rescinded from at least Grand River Hospital and Valley View Hospital, after having been preliminarily hired on or receiving conditional offers, or having references from Defendants'.

68. Plaintiff Nakagaki has documentary evidence proving that Aspen Valley Hospital or its Defendants agents communicated false, misleading, or damaging statements to these and potentially other hospitals in the region.

69. As a result, Plaintiff Nakagaki has been effectively blacklisted from healthcare employment in Colorado.

70. The retaliation and conspiracy caused severe economic harm, emotional

*10 of 57*

distress, and forced Plaintiff Nakagaki to relocate to another state in search of employment.

## 71. CLAIMS FOR RELIEF

### 72. CLAIM 6. First Amendment Retaliation- 42 U.S.C. Section 1983 (Against all Defendants')

73. Plaintiff Nakagaki restates all previous paragraphs

74. Plaintiff Nakagaki's reports regarding disability discrimination, safety concerns, and wage issues were constitutionally protected speech on matters of public concern.

75. Defendants' took adverse employment actions against Plaintiff Nakagaki because of her protected speech, including communicating false and harmful information to other employers.

76. These actions would chill a person of ordinary firmness from continuing to speak out.

77. Defendants' acted in reckless disregard of Plaintiff Nakagaki's clearly establishes constitutional rights under the first and fourteenth Amendments and caused substantial damages.

### 78. CLAIM 7. Civil Conspiracy to Interfere with Civil Rights- 42 U.S.C. Section 1985(3) (Against all Defendants)

79. Plaintiff Nakagaki re-alleges and incorporated all prior paragraphs.

80. Defendants entered into a conspiracy for the purpose of depriving Plaintiff of equal protection and privileges under the law.

81. Defendants took overt acts in furtherance of this conspiracy, including coordinated employed actions, communications, and blacklisting.

82. The conspiracy was motivate by discriminatory animus or intent to punish Plaintiff for protected conduct.

83. As a direct and proximate result, Plaintiff suffered constitutional injury and damages.

### 84. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

85. Enter judgement in Plaintiff's favor on all claims;

86. Award compensatory damages in an amount to be determined at trial;

87. Award punitive damages against individual Defendants;

88. Issue injunctive relief as necessary;

89. Grant such other relief as the Court deems just and proper.

## COLORADO STATE LAWS AND CLAIMS

### STATUTORY STATE CLAIMS

**67. Violation of   Section C.R.S. 8-2-123 Whistleblower Retaliation, Wrongful Termination in Violations of Public Policy**

**Factual Allegations:**

68. During Plaintiff Nakagaki's employment, Plaintiff became aware of and reported workplace conditions that posed serious safety risks to employees and patients. These included, but were not limited to:

Unsafe transportation of instruments; assembled and bloody that can lead to employee contamination of HIV and Hep C and broken instruments, and patient risks of contaminated case carts since the case carts were routinely not washed and brought into the clean side instead of the dirty side of sterile processing department. On 3/7/24 and 3/13/24 and 3/18/24 Pictures were sent to management regarding safety issues.

69. These conditions posed serious risks not only to the health and safety of hospital staff but to the health and safety of patients receiving care at the facility.

70. On or about 3/7/24 and 3/13/24 and 3/18/24 Plaintiff Nakagaki raised these concerns to Kathryn Mueller via text and spoke with Anne Moore and Kathryn Mueller as the heads of the surgical care team, together about how the issues were only a problem to me, and they were not concerns about it. I was also harassed and yelled and screamed at in my face as I questioned the moral and ethical obligations to a higher standard than not using detergent with surgical and hospital instruments when cleaning, and proper procedures when transferring instruments from surgery to decontamination.   Pictures were sent to management regarding safety issues.

71. Plaintiff Nakagaki then filed a report regarding concerns brought up with Kathryn Mueller and Anne Moore, about staff Jessica Bass and with CDPHE and it was found that all of my claims of safety specifically where the facility failed to implement infection control measures in accordance with recognized standards was substantiated.

72. Plaintiff Nakagaki's claim that the facility failed to comply with applicable Infection Prevention and Control Policies and Procedures Regarding Equipment and Instruments regulations pertaining to the subject of the allegation were substantiated.

73. Plaintiff Nakagaki's claims that the facility failed to sterilize surgical instrumentation according to recognized standards, specifically failed to ensure

*18 of 57*

surgical instruments were processed in accordance with facility policies, national guidelines, and manufacturer instructions for use(IFU) were substantiated.

74. Plaintiff Nakagaki Reported these complaints in good faith and based on a reasonable belief that Defendant was violating established health and safety standards and potentially applicable laws or regulations.

75. Plaintiff's Protected disclosures included speificis concerns about the safety of patients care and employees due to reasons of Failure to comply with applicable infection prevention and control policies and procedures regarding equipment and instruments regulations etc.

76. Plaintiff Nakagaki reasonably believed that Defendant's conduct violated state and federal health and safety regulations, including but not limited to OSHA standards, CDC guidance, and Patient safety obligations under Medicare/ medicaid regulations and Colorado Law.

77. Shortly after making these reports, Plaintiff Nakagaki experienced retaliation in many different forms, and Plaintiff Nakagaki's job offer was rescinded and her temporary contract was cancelled only a little over a month into a 13 week contract. On or around 3/15/24 her offer was rescinded and on or around 3/19/24 her temporary contract was cancelled.

78. There is a casual connection between Plaintiff Nakagaki's protected disclosures and the adverse employment action taken by Defendant.

**79. CLAIM 8. Violation of   Section C.R.S. 8-2-123 Whistleblower Retaliation**

80. Plaintiff Nakagaki incorporates by reference the preceding paragraphs.

81. Plaintiff Nakagaki engaged in protected activity by reporting conditions that posed risks to employee and patient safety and that Plaintiff Nakagaki reasonably believed violated state and federal health and safety laws.

82. Defendant took adverse employment action by terminating plaintiff as a direct result of this protected activity.

83. As a result, Plaintiff suffered economic losses from the wrongfully rescinded job offer and the contract that was wrongfully cancelled, emotional distress, reputational harm, and other damages.

**84. CLAIM 9. Wrongful Termination in Violation of Public Policy**

85. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

86. It is the established public policy of the State of Colorado to protect the health and safety of employees and patients, and to encourage whistleblowing of conduct that endangers the public or violates laws and regulations governing workplace and patient care standards.

87. Plaintiff was terminated in contravention of this public policy for reporting serious concerns involving violations of such standards.

*19 of 57*

88. Defendants' actions constitute a wrongful discharge in violation of Colorado public policy.

**Prayer for Relief**
WHEREFORE, plaintiff respectfully requests judgement against defendant as follows:
89. Reinstatement of PLaintiff's former position or, in the alternative front pay;
90. Back Pay, including lost wages for the cancelled travel contract and the the wrongfully rescinded job offer, and benefits, and sign on bonus.
91. Compensatory damages for emotional distress, reputational harm, and related losses;
92. Punitive damages as allowed by law;
93. Any other relief the Court deems just and proper.

**94. CLAIM 10. Violation of C.R.S. 8-2-110 and 8-2-114 Colorado Anti-Blacklisting Protection**

95. These violations arise from adverse employment actions taken against me in retaliation from engaging in protected activity and for exercising my rights under Colorado Employment statutes.
96. During my employment , I observed and or reported unsafe patient and employee safety issues and also ADA employee housing discrimination and threats when talking about wages with co workers.
97. On or about 2/23/24 till the end of my employment 3/19/24 I made many complaints in good faith about the unsafe working conditions resulting from the unsafe transportation of instruments that were not being dissembled properly and were creating a hazards to staff and patients as they were breaking and concealing blood from former patients, as well as infection control procedures within the sterilization department regarding sterilization and processing as well.
98. Following this protected activity, I experienced retaliatory actions, including but not limited to, threats of reduction of over time hours, revoking my permanent job offer, yelling in my face by managers, harassment, termination of my temporary contract, and blacklisting after I ended the contract to multiple future employments.
99. Under Section 8-2-110, an employer may not take retaliation action against an employee who discloses information concerning illegal or unethical practices, especially when such practices endanger public health or safety.
100. Disclosures were made in good faith and were directly related to practices that threatened public health and safety.
101. The Defendants retaliatory actions against me constitute a clear violation of

20   of  57

this statute.

102. Defendant's action in response to plaintiff's lawful conduct, violate Section 8-2-114

103. Plaintiff Nakagaki re-alleges and incorporates by reference the preceding paragraphs as through fully set forth herein.

104. C.R.S. Section 8-2-110 prohibits a public employer from retaliating against an employee who in good faith, discloses information concerning violation of law mismanagement, abuse of authority, or dangers to public health safety.

105. At all relevant times, Defendant (D1) was Plaintiff Nakagaki's public employer, and Plaintiff was engaged in protected activity undertake statute by disclosing matters of public concern and potential illegality.

106. Defendant took adverse action against Plaintiff because of said disclosures, in violation of C.R.S. Section 8-2-110.

107. As a direct and proximate result of defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages, loss of benefits, emotional distress, reputational harm, and other economic and non-economic losses.

108. Pursuant to C.R.S 8-2-114(2), an employer may not retaliate against an employee for engaging in protected activity under Colorado labor laws or for opposing unlawful practices.

109. Plaintiff Nakagaki engaged in statutorily protected conduct by reporting or opposing violation of law or workplace safety regulations.

110. Defendants engaged in retaliatory conduct in reposes to Plaintiff Nakagaki's exercise of those rights, in direct violation of Section 8-2-114.

111. As a result, Plaintiff Nakagaki suffered damages such as loss of employment for multiple facilities, loss of wages, reputational harm,   and emotional distress.

## 112. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nakagaki respectfully requests that this Court enter judgement in Plaintiff's favor and against Defendant for:

113. Compensatory Damages for lost wages and benefits;

114. General damages for emotional distress, reputational harm and inconvenience;

115. Reinstatement, or in the alternative front pay;

116. Statutory penalties, and interest as allowed by law.

117. Any and all other relief the court deems just and proper to deter and prevent this willful and wanton neglect of moral and ethical responsibilities for employees, laws, and patients.

## STATE COMMON LAW CLAIMS

### 118. Factual Allegations

119. Beginning in or around 2/23/24 Plaintiff Nakagaki began experiencing discrimination and "pushback" about employee housing accommodations, Plaintiff Nakagaki also experienced harassment and threats to reduce overtime hours, yelling In her face by management, threatened to be terminated for talking about wage discrepancies with other employees, revocation of a job offer, denial of another job offer she had applied for in the same way another employee had, termination of her travel contract and blacklisting at her future employment. , multiple facilities.

120. Plaintiff Complained or reported illegal, unethical or inappropriate conduct to Kathryn Mueller and Anne Moore, Karra Cieslinski including whistleblowing activity, and shortly thereafter began to experience retaliatory conduct including but not limited to:

A) Undermining of job responsibilities

B) Hostile treatment by supervisors and /or colleagues yelled at in my face by Katheryn Mueller and Anne Moore

C) Denial advancement of benefits- Cancellation of job offer, denial of another job, and cancelation of travel contract

D) Public or private disparagement- Karra putting out a BOLO on me after I went to pick up my things

E) Escalating emotional distress

121. Plaintiff Nakagaki ultimately was terminated and her job offer revoked and another job denied, and future jobs denied due to retaliation and blacklisting and civil conspiracy in retaliation of protected activities.

### 122. CLAIM 11. Tortious Interference with contractual relations- Intentional disruption of employment or other contracts.

123. Plaintiff Nakagaki had valid and enforceable employment and or contractual relationships with AVHand other potential third-party collaborators or clients.

124. Defendants' intentionally and improperly interfered with those relationships without justification, including through false statements, sabotage of work performance, and pressuring third parties not to work with Plaintiff Nakagaki.

125. As a direct result, Plaintiff suffered loss of income, professional reputation, and future employment opportunities.

### 126. CLAIM 12. Intentional Infliction of Emotional Distress (IIED) - Extreme and outrageous conduct causing severe emotional harm.

22 of 57

127. Defendants' Conduct was extreme and outrageous, including a pattern of harassment, retaliatory acts, and or humiliation in the workplace.

128. Defendants either intended to cause emotional distress or acted recklessly with regard for Plaintiff Nakagaki's wellbeing.

129. Plaintiff suffered severe emotional distress, including anxiety, depression, loss of sleep, and other psychological harms.

## 130. CLAIM 13. Civil Conspiracy- Agreement between parties to accomplish an unlawful goal (retaliation, blacklisting, etc.)

131. Defendants acted in concert with one another to mark Plaintiff Nakagaki by engaging in coordinated acts of retaliation, sabotage, and concealment of wrongdoing.

132. The conspiratorial acts were taken with the intent to damage Plaintiff Nakagaki's employment status and reputation and were not isolated incidents.

133. Plaintiff has suffered damages as a result of this conspiracy.

## 134. CLAIM 14. Wrongful Discharge in Violation of Public Policy (Retaliation)

135. Plaintiff engaged in protected activity under Public Policy and Whistleblower Retaliation.

136. Plaintiff Nakagaki was discharged in retaliation for exercising rights under the law and or reporting unethical and illegal behavior.

137. This discharge violates the public policy of Colorado and entitles Plaintiff to Damages including lost wages, benefits, and reinstatement or front pay.

## F. REQUEST FOR RELIEF
## 138. PRAYER FOR RELIEF

139. WHEREFORE, Plaintiff Nakagaki respectfully requests the following relief:

140. Compensatory damages (backpay, front pay, emotional distress damages to be determined in finality in court)

141. Punitive Damages

142. Injunctive relief if applicable

143. Any other relief deemed just and proper by the court to deter, prohibit and stop this horrific behavior.


**Respectfully submitted,**
**Brittany Nakagaki**
**Plaintiff in Pro Per 7/18/25**

Brittany Nakagaki
4200 W I 40 Service Road
Oklahoma City, OK 73108
Brittanynakagaki9@gmail.com
(916)320-0608
Plaintiff in Pro Per

Aspen Valley Hospital
401 Castle Creek Rd.
Aspen, CO 81611
Defendant

Clerk of United States District Court
Alfred A. Arraj United States Courthouse
901 19th Street, Room A-105
Denver, Colorado 80294-3589
303-844-3433
Court House

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Brittany Nakagaki
Plaintiff in Pro Per

v.

(D1)Aspen Valley Hospital and Kathryn Mueller, Anne Moore, Edward Mendez
Luna, Jessica Bass, Kathleen Owens, Karra Cieslinski,
(D2)Valley View Hospital, Lisa Wilson, Tammy Baxter, Caitlyn Anderson, Heila
Ayala;
(D3)Grand River Hospital
Defendants

## I. JURISDICTION AND VENUE

24 of 57

1. This Court has Jurisdiction under 28 U.S.C. Section 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. Plaintiff Nakagaki is seeking lost Wages, around the amount of the 2 year contract and the Sign-on Bonus totaling $126,933.60 (2 year contract at $28.71 per hour, 40 hrs a week = 119,433.60 + $7,500 sign-on bonus) Benefits, and Career Advancement, Reputational harm, and Emotional Distress to be determined in court.
2. Plaintiff, is a citizen of the State of Oklahoma and is domiciled in Oklahoma City, OK.
3. Defendant (D1)is a hospital, with its principal place of business in Aspen, Colorado. Defendant (D2) is a hospital, with its principle place of business in Glenwood Springs, Colorado, and Defendant (D3) is a hospital, with its principle place of business in Rifle, CO.
4. Venue is proper in this district under 28 U.S.C. Section 1391(b)(1) and (2), as the defendant resides and the relevant acts occurred in the United States District Court for the District of Colorado.

II. PARTIES
5. Plaintiff, Brittany Nakagaki, is an individual and resident of Oklahoma City, OK, and is a qualified individual with a disability as defined by the ADA.
6. Defendants' (D1)Aspen Valley Hospital and Anne Moore, Kathryn Mueller, Jessica Bass, Edward Mendez Luna, Kathleen Owens, Aspen Valley Hospital which is a healthcare facility operating in the State of Colorado, with its principal place of business in Aspen, Colorado.
Valley View Hospital, Lisa Wilson, Tammy Baxter, Caitlyn Anderson, Heila Ayala; Grand River Hospital

III. FACTUAL ALLEGATIONS

7. Plaintiff Nakagaki was extended a job offer on or around 3/14 2024 at Aspen Valley Hospital.
8. Plaintiff Nakagaki's job offer was rescinded on 3/15/24 (after accepting the job offer) after making complaints about patient safety, employee safety, employee housing accommodations for her and her service animal, and talking about wages with her co-workers.
9. Plaintiff Nakagaki requested housing from Aspen Valley Hospital for her and her service dog.
10. Plaintiff Nakagaki was denied housing accommodations, and employee housing was made unavailable for the duration of her contract at Aspen Valley Hospital.

25 of 57

11. Plaintiff Nakagaki made complaints via email about employee housing discrimination, patient safety, and employee safety.

12. Plaintiff Nakagaki also talked about wages with other co-workers and was told that she would be terminated by Kathryn Mueller if she kept talking about wages, that wages are confidential.

13. Plaintiff Nakagaki told Defendants' that she was almost trafficked at the hotel she was staying at, and was looking for immediate housing solution, and was denied the emergency employee housing that Defendant has.

14. Plaintiff Nakagaki was discriminated and retaliated against by Defendants' when they rescinded Plaintiff Nakagaki's job offer and then cancelled Plaintiff Nakagaki's Travel Contract.

15. Defendants' continued retaliation by blacklisting Plaintiff Nakagaki, By Libel and Slander to Valley View Hospital and Grand River Hospital and potentially other places as Plaintiff has not been able to keep steady work since the Defamation. Plaintiff has copies of reports from Aspen Valley Hospital giving bad and negative references to these facilities.

16. Plaintiff also has many job rejection letters since Defendants' blacklisting.

17. Defendants' gave a reference for Plaintiff Nakagaki at Valley View Hospital, Plaintiff Nakagaki's job offer was then rescinded on 4/4/24 via phone call and email which will be produced in court, around the day of or after talking to Aspen Valley Hospital for a reference on 4/3/24, Plaintiff Nakagaki had already accepted the job offer and onboarding and had spoken with the housing department to set up an appointment for housing.

18. Plaintiff Nakagaki also has proof of Slander and Defamation from other prospective employment at Grand River Hospital that Defendants' were discriminating against her future employment.

19. Plaintiff Nakagaki had applied to Grand River Hospital and Defendants' gave a negative reference essentially saying not to hire Plaintiff Nakagaki because she takes pics and reports.

20. Because of Defendants' Negative reference Plaintiff Nakagaki was not hired at Grand River Hospital.

21. Plaintiff Nakagaki was subjected to wrongful acts by Defendants', Including but not limited to tortious interference with employment or contractual relations, retaliation, and civil conspiracy, Federal Statutory, Common Law/ Constitutional Claims, State Statutory and Common Law Claims, occurring and/or continuing through March and April 2024 and prospectively into future employment.

22. Defendants and its agents acted intentionally and maliciously to interfere with Plaintiff Nakagaki's Economic opportunities, injure Plaintiff's reputation, and retaliate against Plaintiff for protected activities.

23. As a direct and proximate result of Defendant's actions, Plaintiff suffered economic losses for wages of the wrongfully withdrawn job offer, approximately $126,933.60, along with emotional and repetitional harm.

24. Plaintiff has written evidence from complaints filed with OSHA and EEOC as well as reports from Valley View Hospital proving the Defendants' told Plaintiff Nakagaki's potential employer at Valley View Hospital, Plaintiff Nakagaki is a "Hard Pass" and that there were "Disagreement[s] with management over safety concerns and holding other staff members accountable for lack of work ethic," and after telling Grand River Hospital the Plaintiff Nakagaki takes pics and reports, do not hire her.

25. Plaintiff Nakagaki has a verified complaint of merit from an agency about her reports of patient safety.

26. Plaintiff Nakagaki also has a note about Jessica Bass (**WILLFUL AND WANTON NEGLECT OF DEFENDANTS' ENVIRONMENT** ) not using detergent to wash instruments being used on patients for procedures which Jessica Bass wrote and signed. Plaintiff hopes that the court will address this formally in which the Plaintiff cannot.

## IV. CLAIMS FOR RELIEF

Plaintiff Brittany Nakagaki, by and through proper counsel, Brings this complaint against Defendants' Aspen Valley Hospital, Kathryn Mueller, Anne Moore, Edward Mendez Luna, Jessica Bass, Karra Cieslinski

### FEDERAL LAWS AND CLAIMS

### STATUTORY FEDERAL CLAIMS

27. Title VIII of the Civil Rights Act of 1968(as amended by the Fair Housing Act of 1988)
   CLAIM 1. Section 804(f)(1)(A)- Failure to Rent
   CLAIM 2. Section 804(f)(2)(A)- Discriminatory Terms and Conditions
   CLAIM 3. Section 804(f)(3)(B)- Failure to Make Reasonable Accommodations
   CLAIM 4. Section 818- Enforcement provision (applies to HUD Complaints and civil litigation)

### Factual Allegations for Claims Under Title VIII of the Civil Rights Act of 1968 (as amended by the Fair Housing Act of 1988).

28. Plaintiff Nakagaki is a Qualified Individual with a disability under the Fair Housing Act, 42 U.S.C. Section 3602(h).

29. On or about 2/23/24, Plaintiff Nakagaki applied for or resided at a dwelling

27 of 57

owned or managed by Defendants' located at Beaumont Inn 1301 East Copper Avenue Aspen, CO 81611.

30.Defendants' were aware or had reason to know of Plaintiff Nakagaki's Disability. Plaintiff was terminated on 3/19/24 and never received employee housing or accommodations during her employment.

**Standing and Claims for Relief:**

31.Plaintiff Nakagaki incorporated all prior paragraphs as if fully set forth herein.

32. **CLAIM 1. Refusal to Rent- Section 804(f)(1)(A):** Defendants' refused to rent or otherwise made housing unavailable to Plaintiff Nakagaki verbally and via multiple emails dated from 2/23/24-3/19/24 because of Plaintiff Nakagaki's disability, in violation of 42 U.S.C. Section 3604(f)(1)(A).

33. **CLAIM 2. Discriminatory Terms and Conditions- Section 804(f)(2)(A):** Defendants' Subjected Plaintiff Nakagaki to terms and conditions of tenancy that new more burdensome than those applied to non-disabled tenants, such as restricted access to amenities, possible cleaning fees because of pet dander, via multiple emails dated from 2/23/24-3/19/24, in violation of 42 U.S.C. Section 3604(f)(2)(A).

34. **CLAIM 3. Failure to Make Reasonable Accommodation- Section 804(f)(3) (B):** Plaintiff Nakagaki requested a reasonable accommodation in Defendants' rules/policies (besides disability, Plaintiff also had experienced extremely dangerous circumstances, when also trafficked out of a hotel, which Defendants' have a policy about emergency housing as well and Plaintiff Nakagaki was still denied any employee housing because of her disability) specifically in staying at employee housing. This accommodation was necessary for Plaintiff Nakagaki's equal use and enjoyment of the dwelling. Defendants' refused to make the accommodation, in violation of 42 U.S.C. Section 3604(f)(3)(B).

35. **CLAIM 4. Retaliation/ Interference- Section 818**: After Plaintiff engaged in protected activity under the Fair Housing Act- including requesting accommodations, opposing discrimination and filing a HUD complaint, Defendants' retaliated against Plaintiff Nakagaki including but not limited to: harassment, offered Plaintiff Nakagaki substantially lower wages than other employees, planning to charge Plaintiff Nakagaki $1000 for a pet deposit if she were to get employee housing,(which Plaintiff Nakagaki never received) rescinding Plaintiff Nakagaki's job offer, termination and Blacklisting Plaintiff Nakagaki, giving out bad references and telling other potential employers not to hire Plaintiff Nakagaki.

28 of 57

36. As a direct and proximate result of Defendants' Actions, Plaintiff suffered concrete and particularized injuries, including:
A) Loss of housing opportunity or access;
B) Emotional Distress;
C) Deterred excrete of rights under the Fair Housing Act;
D) Retaliatory harm affecting tenancy and use of the premises.

37. These injuries are traceable to Defendants' Discriminatory conduct and are redressable by this Court through declaratory, injunctive, and monetary relief. Plaintiff has standing to bring theses claims under Article III of the U.S. Constitution. Subject Matter jurisdiction is proper under 28 U.S.C. Section 1331 and 42 U.S.C. Section 3613.

**Prayer for Relief:**

WHEREFORE, Plaintiff Nakagaki respectfully requests that this Court:
38. Declare the Defendants' actions, as alleged above, violate the Fair Housing Act, including:
CLAIM 1. 42 U.S.C. Section 3604 (f)(1)(A), by refusing to rent or otherwise make housing available because of a disability;
CLAIM 2. 42 U.S.C. Section 3604(f)(2)(A), by imposing discriminatory terms, conditions or privileged on the basis of disability;
CLAIM 3. 42 U.S.C. Section 3604(f)(3)(B), by failing to provide reasonable accommodations necessary to use and enjoy the dwelling, and
CLAIM 4. 42 U.S.C. Section 3617, by coercing, or interfering with the Plaintiff in the exercise or enjoyment of rights granted under the Fair Housing Act.

39. Order Injunctive Relief requiring Defendants' to:
a) Cease all discriminatory practices against individuals with disabilities;
b) provide reasonable accommodations as required under Federal Law;
c) Implement policies and training to ensure future compliance with the Fair Housing Act.

40. Award Compensatory Damage for emotional distress, inconvenience, and loss of housing opportunity suffered as a result of Defendants' unlawful conduct, Provide Plaintiff Nakagaki with a position at any such time at Defendants' with reasonable accommodations as needed and requested.
41. Grant such other and further relief as the Court may deem just and proper.

42. **CLAIM 5. Americans with disabilities Act( ADA), Title II- Discrimination**

29 of 57

by public entities(covers state and local governments)

**Factual Allegations:**

43. Plaintiff Nakagaki is a qualified individual with a disability as defined by the ADA.

44. On or about 2/23/24-3/19/24 Plaintiff Nakagaki attempted to use the Defendants' employee housing.

45. Defendants' Failed to provide reasonable accommodations to allow Plaintiff Nakagaki to use the facilities (employee housing- no pet policy defendant refused to allow Plaintiff Nakagaki's service animal and/or make employee housing available for use to Plaintiff Nakagaki after learning of her disability and accommodations)

46. As a direct result of Defendants' inaction, Plaintiff Nakagaki was denied meaningful access and equal opportunity to benefit from the public service, causing missed opportunity, emotional distress, and exclusion.

47. Defendant had knowledge of Plaintiff Nakagaki's disability and was aware of its obligations under the ADA but failed to act or make reasonable accommodations. (As evidenced in emails to and from Plaintiff Nakagaki between 2/23/24-3/29/24 to Defendants')

**Standing:**

48. Plaintiff Nakagaki has standing to being this action. Plaintiff suffered an injury in fact that is concrete and particularized, in that Plaintiff Nakagaki was excluded from participation in, denied the benefits of, and subjected to discrimination by Defendants' from employee housing, resulting in emotional damage, and eventually termination of job and rescinding of job offer contract for 2 years with defendant, and retaliation including but not limited to, blacklisting for future employment, reputational harm, Intentional Infliction of emotional distress

49. Plaintiff Nakagaki's injury is traceable to Defendants' conduct through multiple avenues of emails from Defendant while Plaintiff was employed to statements from other facilities regarding bad references (blacklisting) from Defendants', including denial of meaningful access to employee housing.

50. The injury is redressable by the Court through injunctive and/ or declaratory relief, as well as compensatory damages.

**Claim for Relief:**

Violation of Title II of ADA( 42 U.S.C. Section 12132)

51. Plaintiff Nakagaki incorporated all prior paragraphs as if fully set forth herein.

52. Defendants', a Public entity, has discriminated against Plaintiff Nakagaki from participation in and denying Plaintiff Nakagaki the benefits of its services, programs, or activities, in violation of 42 U.S.C. Section 12132 and it implementing regulations, 28 C.F.R. part 35.

*30 of 57*

53. Defendants' failed to provide reasonable modification or to ensure effective communication/ access, despite being legally obligated to do so with their employee housing for Plaintiff Nakagaki.

54. As a result, Plaintiff Nakagaki has suffered injury and is entitled to appropriate declaratory and injunctive relief, and where applicable, compensatory damages.

**Prayer for Relief:**

WHEREFORE, Plaintiff Nakagaki respectfully requests that the court:

55. Declare that Defendants' conduct violated Title II of the ADA;

56. Issue an injection requiring defendant to make its services/programs/employee housing accessible;

57. Award Plaintiff Nakagaki compensatory damages, and declare that Plaintiff Nakagaki has the right to a position at this facility and use employee housing with accommodations for her service animal in compliance with ADA guidelines ;

58. Grant any other relief the Court deems just and proper.

---

## FEDERAL COMMON LAW/ CONSTITUTIONAL CLAIMS

**63. Violation of 42 U.S.C. Section 1983- Retaliation; 42 U.S.C. Section 1985(3) - Civil Conspiracy**

**Factual Allegations**

64. In or around February and March 2024, Plaintiff reported
A) ADA Violation related to employee Housing and disability accommodations,
B) Unsafe working conditions affecting patients and staff,
C) Concerns regarding pay disparity and wages for sterile processing staff

65.These reports were made internally to Kathryn Mueller and Edward Mendez Luna, and conversed with Anne Moore regarding Jessica Bass and Kathleen Owens and involved matters of public concern. With matters of responding to patient and safety issues were spoken with Karra Cieslinski and Becca Carcaterra as well as the wages and emergency employee housing due to almost getting trafficked at the hotel I was staying at. And externally to HUD, OSHA, CDLE, NLRB, CCRD, DORA, EEOC, Joint Commission etc.

66. Defendants' through their official and in cooperation with each other, took retaliatory action against Plaintiff Nakagaki, including but not limited to Blacklisting, reputational harm, revocation of job offers and denial of job to Plaintiff Nakagaki.

67. Upon information and belief, the Defendants communicated and coordinated

31 of 57

their actions in furtherance of a conspiracy to retaliate against Plaintiff Nakagaki and deprive Plaintiff Nakagaki of equal protection and liberty interests.

68. the retaliatory and conspiratorial conduct caused Plaintiff Nakagaki to suffer financial harm, emotional distress, reputational damage, and other injuries.

66. With-in weeks of making these protected reports, Plaintiff Nakagaki experienced retaliation from AVH and individuals acting on its behalf, including:

A) Harassment in the workplace

B) Pretextual negative evaluations or false statements

C) Communication of harmful informations to other hospitals.

67. In March and April 2024, Plaintiff Nakagaki had job offers rescinded from at least Grand River Hospital and Valley View Hospital, after having been preliminarily hired on or receiving conditional offers, or having references from Defendants'.

68. Plaintiff Nakagaki has documentary evidence proving that Aspen Valley Hospital or its Defendants agents communicated false, misleading, or damaging statements to these and potentially other hospitals in the region.

69. As a result, Plaintiff Nakagaki has been effectively blacklisted from healthcare employment in Colorado.

70. The retaliation and conspiracy caused severe economic harm, emotional distress, and forced Plaintiff Nakagaki to relocate to another state in search of employment.

## 71. CLAIMS FOR RELIEF

### 72. CLAIM 6. First Amendment Retaliation- 42 U.S.C. Section 1983 (Against all Defendants')

73. Plaintiff Nakagaki restates all previous paragraphs

74. Plaintiff Nakagaki's reports regarding disability discrimination, safety concerns, and wage issues were constitutionally protected speech on matters of public concern.

75. Defendants' took adverse employment actions against Plaintiff Nakagaki because of her protected speech, including communicating false and harmful information to other employers.

76. These actions would chill a person of ordinary firmness from continuing to speak out.

77. Defendants' acted in reckless disregard of Plaintiff Nakagaki's clearly establishes constitutional rights under the first and fourteenth Amendments and caused substantial damages.

### 78. CLAIM 7. Civil Conspiracy to Interfere with Civil Rights- 42 U.S.C. Section 1985(3)

32 of 57

**(Against all Defendants)**

79. Plaintiff Nakagaki re-alleges and incorporated all prior paragraphs.

80. Defendants entered into a conspiracy for the purpose of depriving Plaintiff of equal protection and privileges under the law.

81. Defendants took overt acts in furtherance of this conspiracy, including coordinated employed actions, communications, and blacklisting.

82. The conspiracy was motivate by discriminatory animus or intent to punish Plaintiff for protected conduct.

83. As a direct and proximate result, Plaintiff suffered constitutional injury and damages.

**84. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

85. Enter judgement in Plaintiff's favor on all claims;

86. Award compensatory damages in an amount to be determined at trial;

87. Award punitive damages against individual Defendants;

88. Issue injunctive relief as necessary;

89. Grant such other relief as the Court deems just and proper.

## COLORADO STATE LAWS AND CLAIMS

### STATUTORY STATE CLAIMS

**67. Violation of Section C.R.S. 8-2-123 Whistleblower Retaliation, Wrongful Termination in Violations of Public Policy**

**Factual Allegations:**

68. During Plaintiff Nakagaki's employment, Plaintiff became aware of and reported workplace conditions that posed serious safety risks to employees and patients. These included, but were not limited to:
Unsafe transportation of instruments; assembled and bloody that can lead to employee contamination of HIV and Hep C and broken instruments, and patient risks of contaminated case carts since the case carts were routinely not washed and brought into the clean side instead of the dirty side of sterile processing department. On 3/7/24 and 3/13/24 and 3/18/24 Pictures were sent to management regarding safety issues.

69. These conditions posed serious risks not only to the health and safety of hospital staff but to the health and safety of patients receiving care at the facility.

70. On or about 3/7/24 and 3/13/24 and 3/18/24 Plaintiff Nakagaki raised these concerns to Kathryn Mueller via text and spoke with Anne Moore and Kathryn Mueller as the heads of the surgical care team, together about how the issues were

only a problem to me, and they were not concerns about it. I was also harassed and yelled and screamed at in my face as I questioned the moral and ethical obligations to a higher standard than not using detergent with surgical and hospital instruments when cleaning, and proper procedures when transferring instruments from surgery to decontamination. Pictures were sent to management regarding safety issues.

71. Plaintiff Nakagaki then filed a report regarding concerns brought up with Kathryn Mueller and Anne Moore, about staff Jessica Bass and with CDPHE and it was found that all of my claims of safety specifically where the facility failed to implement infection control measures in accordance with recognized standards was substantiated.

72. Plaintiff Nakagaki's claim that the facility failed to comply with applicable Infection Prevention and Control Policies and Procedures Regarding Equipment and Instruments regulations pertaining to the subject of the allegation were substantiated.

73. Plaintiff Nakagaki's claims that the facility failed to sterilize surgical instrumentation according to recognized standards, specifically failed to ensure surgical instruments were processed in accordance with facility policies, national guidelines, and manufacturer instructions for use(IFU) were substantiated.

74. Plaintiff Nakagaki Reported these complaints in good faith and based on a reasonable belief that Defendant was violating established health and safety standards and potentially applicable laws or regulations.

75. Plaintiff's Protected disclosures included speificis concerns about the safety of patients care and employees due to reasons of Failure to comply with applicable infection prevention and control policies and procedures regarding equipment and instruments regulations etc.

76. Plaintiff Nakagaki reasonably believed that Defendant's conduct violated state and federal health and safety regulations, including but not limited to OSHA standards, CDC guidance, and Patient safety obligations under Medicare/ medicaid regulations and Colorado Law.

77. Shortly after making these reports, Plaintiff Nakagaki experienced retaliation in many different forms, and Plaintiff Nakagaki's job offer was rescinded and her temporary contract was cancelled only a little over a month into a 13 week contract. On or around 3/15/24 her offer was rescinded and on or around 3/19/24 her temporary contract was cancelled.

78. There is a casual connection between Plaintiff Nakagaki's protected disclosures and the adverse employment action taken by Defendant.

**79. CLAIM 8. Violation of Section C.R.S. 8-2-123 Whistleblower Retaliation**
80. Plaintiff Nakagaki incorporates by reference the preceding paragraphs.
81. Plaintiff Nakagaki engaged in protected activity by reporting conditions that posed risks to employee and patient safety and that Plaintiff Nakagaki reasonably believed violated state and federal health and safety laws.

34 of 57

82. Defendant took adverse employment action by terminating plaintiff as a direct result of this protected activity.

83. As a result, Plaintiff suffered economic losses from the wrongfully rescinded job offer and the contract that was wrongfully cancelled, emotional distress, reputational harm, and other damages.

### 84. CLAIM 9. Wrongful Termination in Violation of Public Policy

85. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

86. It is the established public policy of the State of Colorado to protect the health and safety of employees and patients, and to encourage whistleblowing of conduct that endangers the public or violates laws and regulations governing workplace and patient care standards.

87. Plaintiff was terminated in contravention of this public policy for reporting serious concerns involving violations of such standards.

88. Defendants' actions constitute a wrongful discharge in violation of Colorado public policy.

### Prayer for Relief

WHEREFORE, plaintiff respectfully requests judgement against defendant as follows:

89. Reinstatement of PLaintiff's former position or, in the alternative front pay;

90. Back Pay, including lost wages for the cancelled travel contract and the the wrongfully rescinded job offer, and benefits, and sign on bonus.

91. Compensatory damages for emotional distress, reputational harm, and related losses;

92. Punitive damages as allowed by law;

93. Any other relief the Court deems just and proper.

### 94. CLAIM 10. Violation of C.R.S. 8-2-110 and 8-2-114 Colorado Anti-Blacklisting Protection

95. These violations arise from adverse employment actions taken against me in retaliation from engaging in protected activity and for exercising my rights under Colorado Employment statutes.

96. During my employment , I observed and or reported unsafe patient and employee safety issues and also ADA employee housing discrimination and threats when talking about wages with co workers.

97. On or about 2/23/24 till the end of my employment 3/19/24 I made many complaints in good faith about the unsafe working conditions resulting from the unsafe transportation of instruments that were not being dissembled properly and were creating a hazards to staff and patients as they were breaking and concealing blood from former patients, as well as infection control procedures within the

35 of 57

sterilization department regarding sterilization and processing as well.

98. Following this protected activity, I experienced retaliatory actions, including but not limited to, threats of reduction of over time hours, revoking my permanent job offer, harassment, termination of my temporary contract, and blacklisting after I ended the contract to multiple future employments.

99. Under Section 8-2-110, an employer may not take retaliation action against an employee who discloses information concerning illegal or unethical practices, especially when such practices endanger public health or safety.

100. Disclosures were made in good faith and were directly related to practices that threatened public health and safety.

101. The Defendants retaliatory actions against me constitute a clear violation of this statute.

102. Defendant's action in response to plaintiff's lawful conduct, violate Section 8-2-114

103. Plaintiff Nakagaki re-alleges and incorporates by reference the preceding paragraphs as through fully set forth herein.

104. C.R.S. Section 8-2-110 prohibits a public employer from retaliating against an employee who in good faith, discloses information concerning violation of law mismanagement, abuse of authority, or dangers to public health safety.

105. At all relevant times, Defendant (D1) was Plaintiff Nakagaki's public employer, and Plaintiff was engaged in protected activity undertake statute by disclosing matters of public concern and potential illegality.

106. Defendant took adverse action against Plaintiff because of said disclosures, in violation of C.R.S. Section 8-2-110.

107. As a direct and proximate result of defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages, loss of benefits, emotional distress, reputational harm, and other economic and non-economic losses.

108. Pursuant to C.R.S 8-2-114(2), an employer may not retaliate against an employee for engaging in protected activity under Colorado labor laws or for opposing unlawful practices.

109. Plaintiff Nakagaki engaged in statutorily protected conduct by reporting or opposing violation of law or workplace safety regulations.

110. Defendants engaged in retaliatory conduct in reposes to Plaintiff Nakagaki's exercise of those rights, in direct violation of Section 8-2-114.

111. As a result, Plaintiff Nakagaki suffered damages such as loss of employment for multiple facilities, loss of wages, reputational harm, and emotional distress.

## 112. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nakagaki respectfully requests that this Court enter judgement in Plaintiff's favor and against Defendant for:

113. Compensatory Damages for lost wages and benefits;

36 of 57

114. General damages for emotional distress, reputational harm and inconvenience;

115. Reinstatement, or in the alternative front pay;

116. Statutory penalties, and interest as allowed by law.

117. Any and all other relief the court deems just and proper to deter and prevent this willful and wanton neglect of moral and ethical responsibilities for employees, laws, and patients.

---

## STATE COMMON LAW CLAIMS

### 118. Factual Allegations

119. Beginning in or around 2/23/24 Plaintiff Nakagaki began experiencing discrimination and "pushback" about employee housing accommodations, Plaintiff Nakagaki also experienced harassment and threats to reduce overtime hours, yelling In her face by management, threatened to be terminated for talking about wage discrepancies with other employees, revocation of a job offer, denial of another job offer she had applied for in the same way another employee had, termination of her travel contract and blacklisting at her future employment. , multiple facilities.

120. Plaintiff Complained or reported illegal, unethical or inappropriate conduct to Kathryn Mueller and Anne Moore, Karra Cieslinski including whistleblowing activity, and shortly there after began to experience retaliatory conduct including but not limited to:

A) Undermining of job responsibilities

B) Hostile treatment by supervisors and /or colleagues yelled at in my face by Katheryn Mueller and Anne Moore

C) Denial advancement of benefits- Cancellation of job offer, denial of another job, and cancelation of travel contract

D) Public or private disparagement- Karra putting out a BOLO on me after I went to pick up my things

E) Escalating emotional distress

121. Plaintiff Nakagaki ultimately was terminated and her job offer revoked and another job denied, and future jobs denied due to retaliation and blacklisting and civil conspiracy in retaliation of protected activities.

### 122. CLAIM 11. Tortious Interference with contractual relations- Intentional disruption of employment or other contracts.

123. Plaintiff Nakagaki had valid and enforceable employment and or contractual relationships with AVHand other potential third-party collaborators or clients.

37 of 57

124. Defendants' intentionally and improperly interfered with those relationships without justification, including through false statements, sabotage of work performance, and pressuring third parties not to work with Plaintiff Nakagaki.
125. As a direct result, Plaintiff suffered loss of income, professional reputation, and future employment opportunities.

**126. CLAIM 12. Intentional Infliction of Emotional Distress (IIED) - Extreme and outrageous conduct causing severe emotional harm.**
127. Defendants' Conduct was extreme and outrageous, including a pattern of harassment, retaliatory acts, and or humiliation in the workplace.
128. Defendants either intended to cause emotional distress or acted recklessly with regard for Plaintiff Nakagaki's wellbeing.
129. Plaintiff suffered severe emotional distress, including anxiety, depression, loss of sleep, and other psychological harms.

**130. CLAIM 13. Civil Conspiracy- Agreement between parties to accomplish an unlawful goal (retaliation, blacklisting, etc.)**
131. Defendants acted in concert with one another to mark Plaintiff Nakagaki by engaging in coordinated acts of retaliation, sabotage, and concealment of wrongdoing.
132. The conspiratorial acts were taken with the intent to damage Plaintiff Nakagaki's employment status and reputation and were not isolated incidents.
133. Plaintiff has suffered damages as a result of this conspiracy.

**134. CLAIM 14. Wrongful Discharge in Violation of Public Policy (Retaliation)**
135. Plaintiff engaged in protected activity under Public Policy and Whistleblower Retaliation.
136. Plaintiff Nakagaki was discharged in retaliation for exercising rights under the law and or reporting unethical and illegal behavior.
137. This discharge violates the public policy of Colorado and entitles Plaintiff to Damages including lost wages, benefits, and reinstatement or front pay.

**138. PRAYER FOR RELIEF**
139. WHEREFORE, Plaintiff Nakagaki respectfully requests the following relief:
140. Compensatory damages (backpay, front pay, emotional distress damages to be determined in finality in court)
141. Punitive Damages
142. Injunctive relief if applicable
143. Any other relief deemed just and proper by the court to deter, prohibit and stop this horrific behavior.

*38 of 57*

**DEMAND FOR A JURY TRIAL**
Plaintiff Nakagaki demands a trial by jury an all issues so triable.


Respectfully Submitted,
Brittany Nakagaki
4200 W I 40 Service Road
Oklahoma City, OK 73108
Brittanynakagaki9@gmail.com
916-320-0608